# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | :: | |
| | :: | |
| v. | :: | CRIMINAL ACTION FILE |
| | :: | |
| MICHAEL JON KELL, | :: | NO. 1:16-CR-121-ELR-AJB |
| | :: | |
| Defendant. | :: | |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Defendant Jon Michael Kell moves to suppress the statements he made to Internal Revenue Service ("IRS") Special Agent Jeron Clark on the grounds of voluntariness. [Doc. 27]. The Court conducted an evidentiary hearing, [Doc. 37 (hereinafter "T__")], and the parties filed post-hearing briefs. [Docs. 38, 39]. For the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED**.

*Facts*

Clark was investigating Kell in a criminal tax investigation, and in September 2012, he left his business card at Kell's house. T11. Kell called him back, and, after Clark told him the subject of the interview, Kell agreed to come to the IRS to be interviewed there rather than at his home. *Id.*

On September 27, 2012, Clark conducted an in-person interview of Kell in a conference room at the IRS. *Id.* at 11-12. Kell arrived on his own. *Id.* at 11. Clark was dressed in business attire and never showed Kell his firearm. *Id.* at 13. Kell asked if he could record the interview, and Clark allowed him to do so. *Id.* at 13-14. As a result, although the IRS does not typically record non-custodial interviews, Clark recorded the interview because Kell was recording it. *Id.*; *see also* Govt. Ex. 2. During the interview, Clark's tone was at all times calm, professional, and respectful. *Id.*

At the beginning of the interview, Clark read Kell his noncustodial rights. *Id.* at 10, 15; Govt. Ex. 1. The rights form provided that:

> As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses. In connection with my investigation of your tax liability (or other matter), I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of any attorney before responding.

Govt. Ex. 1. Kell acknowledged that he understood those rights and agreed to proceed with the interview. T15. Clark testified that although Kell did not bring a lawyer, he

2

would have been permitted to do so.  *Id.* at 12.  He was also free to terminate the interview at any time.  *Id.* at 13.

Kell did not ask to have a lawyer present or to terminate the interview.  *Id.* at 16.  He answered all of Clark's questions.  *Id.*  Clark did not observe anything about Kell that suggested that he was under the influence of alcohol or drugs, or that he had any mental disability.  *Id.*  He seemed to understand what was happening.  *Id.*  At no time did Clark threaten or promise Kell anything for his cooperation during the interview.  *Id.* at 16-17.  Kell asked questions of Clark.  *Id.* at 17.

Following the interview, Clark had a few sporadic phone calls with Kell (on February 27, April 14, and April 15, 2014.  *Id.* at 19, 39.  Kell also responded to a summons for documents.  *Id.* at 21.  Further, Kell submitted unsolicited paper and email correspondence to Clark, which Clark opined was highly unusual from a target of a criminal investigation.  *Id.* at 20.

Towards the end of his investigation in the Spring of 2014, Clark learned from another witness that Kell might have bipolar disorder.  *Id.* at 19, 25, 35.  Pursuant to IRS policy, Clark called Kell to discuss that issue.  *Id.* at 19.  Kell advised Clark that he did have bipolar disorder, but stated that it was under control with medication.  *Id.*

3

The witness who told Clark that Kell had bipolar disorder also stated that Kell was "the most functional person with bipolar that he knew." *Id.* at 34.

Voluntariness of statements is analyzed similarly to voluntariness of a waiver of a waiver of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *Colorado v. Connelly*, 479 U.S. 156, 168 (1986); *Miranda*, 384 U.S. at 475. While the Eleventh Circuit has "enumerated a number of (non-exclusive) factors that may bear on the issue of voluntariness, the absence of official coercion is a *sine qua non* of effective consent . . . ." *United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996) (citations omitted), *overruled on other grounds by Arizona v. Gant*, 556 U.S. 332 (2009). Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. *See Connelly*, 479 U.S. at 163 n.1; *Miller v. Dugger*, 838 F.2d 1530, 1536 (11th Cir. 1988); *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1362-63 (11th Cir. 1984). Isolated incidents of police deception, *id.*; *Frazier v. Cupp*, 394 U.S. 731, 739 (1969), and discussions of realistic penalties for cooperative and non-cooperative defendants, *see United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992); *United States v. Nash*, 910 F.2d 749, 753

4

(11th Cir. 1990), are normally insufficient to preclude free choice. Even the interrogators' knowledge that a suspect may have mental problems does not make the suspect's statement involuntary unless " '[t]he police exploited this weakness *with coercive tactics*.' " *Miller*, 853 F.2d at 1357 (quoting *Connelly*, 479 U.S. at 521 (emphasis in *Miller*)).

In this case, the totality of the circumstances demonstrates that Kell's statements were voluntary. He voluntarily appeared at the IRS's offices for the interview. He was advised of his noncustodial interview rights, including the right not to submit to an interview and to appear with a lawyer. He was allowed to record the interview. Clark made no promises to him and did not threaten him. Kell felt comfortable enough to ask his own questions, and his later voluntary document submission is some evidence that the interview was voluntary.

Finally, there is no evidence that Clark was aware that Kell had bipolar disorder when he interviewed him in September 2012. As a result, he did not take advantage of any such disorder. Further, as the witness told Clark, Kell was very highly functioning even with the disorder. Therefore, Kell's bipolar disorder did not render his statements involuntary.

5

Therefore, for all of the reasons stated above, the undersigned **RECOMMENDS** that Kell's motion to suppress statements, [Doc. 27], be **DENIED**.

The Court has now recommended a ruling as to those dispositive motions referred pursuant to Standing Order 14-02 (N.D. Ga. Aug. 15, 2014). Further, the parties have not reported any impediments to the scheduling of a trial. Therefore, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED and CERTIFIED**, this ___7th___ day of August, 2017.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)